UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CAPSOURCE, INC., a Nevada corporation; and EQUISOURCE HOLDINGS, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>BETH MOORE,<br><br>Defendant. | Case No. 2:15-cv-00354-MMD-GWF<br><br>ORDER |

## I. SUMMARY

This declaratory relief action presents the preliminary question of whether the Court should entertain the action or transfer it to another district where the damage claims are being litigated. Before the Court is Defendant Beth Moore's ("Moore") Motion to Dismiss, or in the Alternative to Transfer Venue ("Motion"). (Dkt. no. 10.) Plaintiffs CapSource, Inc. ("CapSource") and Equisource Holdings, LLC ("Equisource") have filed a response and Defendant has replied. (Dkt. nos. 13, 15.) For the reasons discussed herein, the Court grants Moore's request to transfer.

## II. BACKGROUND

The following facts are taken from the Complaint in this case and from Moore's Complaint, which she filed against Plaintiffs in the Western Division of the United States District Court for the Northern District of Ohio ("Ohio Action"). (Dkt. no. 1; dkt. no. 10 at 27-34).

The parties' dispute arose from Moore's trust's purchase of three properties located in Birmingham, Alabama ("the Properties") from Equisource. (Dkt. no. 1 at 2;dkt. no. 10 at 30-31.) CapSource and Equisource are affiliated Nevada entities and are owned by the same principals. (Dkt. no. 14 at 1-2; dkt. no. 12 at 31.) CapSource is a real estate investment and mortgage lending company; Equisource is a real estate holding company. (Dkt. no. 14 at 1-2.) Moore is a citizen of Ohio. (Dkt. no. 1 at 2.)

Moore alleges that Jason Michel, a representative of CapSource, solicited Moore by phone at her home in Toledo, Ohio, and ultimately persuaded Moore to move her entire retirement funds into a self-directed retirement account with Provident Trust Corp. (an entity chosen by CapSource) to allow her to use those funds for future investments. (Dkt. no. 15-1 at 2.) CapSource eventually recommended that Moore purchase the Properties from Equisource using funds from her Provident Trust Corp. account, which she did. (Dkt. no. 10. at 30; dkt. no. 13 at 4.) Michel's assistant, Arlene Dillard, emailed the Real Property Purchase Agreements ("the Agreements") to Moore to sign.[1] (Dkt. no.15-1 at 2-3.) Moore alleges that the Properties were overpriced and did not perform as represented. (Dkt. no. 10 at 31-34.) Plaintiffs allege that they attempted to work with Moore to purchase the Properties from her after learning that she was selling them at a discount far below what Plaintiffs believed to be the value of the Properties. (Dkt. no. 1 at 4-6.)

On February 9, 2015, the parties participated in a mediation in Las Vegas, but they failed to reach a resolution. (Dkt. no. 1 at 5; dkt. no. 10 at 4.) According to Moore, CapSource indicated it would require a few weeks to evaluate the mediator's recommendation. (Dkt. no. 10 at 4.) In response, Moore's counsel informed CapSource's counsel that Moore would initiate legal action in Ohio if a settlement could not be reached. (*Id.*) Instead of responding to Moore's counsel, on February 27, 2015, Plaintiffs initiated this action, asserting a single claim for declaratory relief. (Dkt. no. 1.)

---

[1]The Agreements identified the "buyer" as "Provident Trust Group FBO: Beth Moore." (Dkt. no. 10 at 16-20.)

2

On March 20, 2015, Moore filed her Ohio Action.[2] (Dkt. no. 10 at 4.) Moore subsequently amended her Complaint to add three individual defendants: Jason Michel, Arlene Dillard, and Steve Byrne.[3] (*Id.*)

## III. DISCUSSION

Moore argues that the Court should decline to exercise its discretion to entertain Plaintiffs' declaratory relief claim, or in the alternative, the Court should transfer this action to the Northern District of Ohio. Moore asks the Court to exercise its discretion to dismiss Plaintiffs' action, citing her pending lawsuit in Ohio as the basis for dismissal. In determining whether to exercise such discretion, however, the Court would examine factors that overlap with the transfer analysis. Although Moore presents her Motion as requesting alternative forms of relief, the Court finds that the two issues — whether the Court should exercise jurisdiction over Plaintiffs' declaratory relief claim and whether the Court should transfer venue — are intertwined. Because the Court finds that granting a transfer would discourage the use of a declaratory action as a means of forum shopping and would avoid duplicative litigation, the Court grants Moore's request to transfer.

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . [the court] . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act thus gives a district court the discretion to "decline to exercise jurisdiction over a declaratory action even though subject matter jurisdiction is otherwise proper." *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1166 (9th Cir. 1998) (per curiam). The following factors—defined by the Supreme Court in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)—continue to be the "philosophic touchstone" in determining whether to exercise such discretion: "avoid needless determination of state law issues;" "discourage litigants from filing declaratory actions as a means of forum

---

[2] Plaintiffs have moved to transfer or to stay the Ohio Action. (Dkt. no. 14-6.)

[3] Moore alleges that Dillard was the CapSource employee who forwarded the Agreements to Moore by email and directed her to sign them. (Dkt. no. 10 at 28, 30-31.) Moore alleges that Byrne is the owner of CapSource and Equisource. (*Id.*)

3

shopping;" and "avoid duplicative litigation." *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1118 (9th Cir. 1999) (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).

The Court finds that two of the *Brillhart* factors are implicated here. First, given the status of the parties' efforts at mediation and the threat of litigation from Moore, the Court finds Moore's argument that Plaintiffs filed this action in anticipation of Moore's lawsuit and as an attempt to select their choice of forum to be persuasive. Moreover, this action is somewhat parallel to the Ohio Action, which asserts damage claims based on a similar set of factual allegations. These findings, considered alongside the interest of justice, compel the Court to transfer this action to the Northern District of Ohio.

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The purpose of this section is to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005). (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)) (internal quotation marks omitted).

Motions to transfer venue are adjudicated through an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Further, § 1404(a) "requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Id.* at 498. Courts may, for example, consider the following factors:

> (1) [T]he location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of

4

>unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. A "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted).

Because Plaintiffs are asserting a sole claim for declaratory relief, the first and second factors are neutral. Indeed, resolution of the declaratory relief claim involves, in part, a determination of the transactions that occurred in Alabama surrounding the purchase, management, and sale of the Properties. The sixth factor — differences in costs of litigation — is also neutral. Nor do the parties present any persuasive argument to compel a finding that the seventh and eighth factors tip in favor of either forum. Instead, the availability of compulsory process and ease of access to sources of proof are relatively similar in Nevada and Ohio. The Properties and some witnesses are located in Birmingham, Alabama. Contrary to Moore's argument, however, the fact that Ohio is geographically closer to Birmingham does not seem to give Ohio any more advantage when weighing these two factors. Shorter distance does not necessarily translate into lower cost in terms of travel, and Moore presents no such evidence to support her argument.

Plaintiffs argue that their choice of forum and the first-to-file rule should compel the Court to find that Nevada is the proper forum. They acknowledge that there are exceptions to the first-to-file rule, including anticipatory lawsuits and forum shopping, but argue that these exceptions do not apply. (Dkt. no. 13 at 9.) Because the Court finds that Plaintiffs initiated this action as an attempt to forum shop in anticipation of Moore's lawsuit, the fact that Plaintiffs filed first does not warrant a finding in favor of their choice of forum.

The fourth and fifth factors — contacts with the forum state — do tip in favor of transfer. Plaintiffs contend that the parties' dispute "has always centered in Nevada." (Dkt. no. 13 at 8.) Plaintiffs point to the fact that Moore hired Nevada counsel and

5

participated in mediation in Nevada. These events, however, occurred after the parties' dispute arose — the resolution of Plaintiffs' declaratory relief claim depends on the facts and conduct that occurred before the mediation. While the Complaint is not clear about which foundational documents evidence the parties' respective obligations, the Agreements are presumably part of those documents. The Agreements were emailed to Moore in Ohio for her to sign. Plaintiffs' declaratory relief claim also has contacts with Ohio. CapSource solicited Moore by phone in Ohio, and its employees maintained continuous communications with Moore by phone and email to facilitate the purchase of the Properties and the signing of the Agreements. While some of the events underlying the declaratory relief claim occurred in Alabama, many occurred as a result of Plaintiffs' contacts with Moore in Ohio, and not because of Moore's contacts with Nevada.

Plaintiffs argue that the Agreements identify Nevada as the agreed-upon forum. Plaintiffs erroneously rely on Paragraph 19 of the Agreements, which relates to mediation with the Greater Las Vegas Association of Realtors before commencement of litigation. (Dkt. no. 13 at 4, 10.) As Moore correctly points out, the parties did not indicate whether they agreed or disagreed with that provision because the two choices available in the form Agreements — "do" or "do not" agree — were left blank. (*See* dkt. no. 10 at 17, 20.) Even if the parties had marked that they agreed to submit their dispute to mediation, Paragraph 19 addresses mediation with the Greater Las Vegas Association of Realtors; it does not provide that the parties would agree to Nevada as the venue for litigation. Moreover, Plaintiffs do not contend that the parties failed to satisfy this alternative dispute resolution requirement. Indeed, it is undisputed that mediation occurred in Las Vegas. In sum, Paragraph 19 is not a forum selection clause because it addresses mediation, not venue for litigation.

The Court concludes that the interest of justice mandates a transfer of this case to the Northern District of Ohio. Plaintiffs reached out to Moore in Ohio to solicit her by phone, which led to Moore purchasing the Properties in Alabama and the dispute underlying Plaintiffs' declaratory relief claim. After it became clear that the parties could

not resolve their dispute through mediation, Plaintiffs filed this lawsuit seeking declaratory relief in anticipation of Moore's lawsuit in Ohio.

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendant Beth Moore's Motion to Dismiss, or in the Alternative to Transfer Venue (dkt. no. 10) is granted. This case will be transferred to the Northern District of Ohio. The Clerk is directed to effectuate the transfer and close this case.

DATED THIS 30th day of October 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE